# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEPH LISKA,<br><br>                Petitioner,<br><br>vs.<br><br>MARK MACARRO; MARK CALAC; MAR LUKER; JOHN MAGEE; ANDREW MASIIEL; DONNA BARON; BUTCH MURPHY; and DOES 1 to 50,<br><br>                Respondents. | CASE NO. 08-CV-1872-IEG (POR)<br><br>**ORDER:**<br><br>**(1) DENYING PETITIONER'S MOTION FOR DEFAULT JUDGMENT (Doc. No 19); and**<br><br>**(2) GRANTING IN PART AND DENYING IN PART RESPONDENT'S MOTION TO DISMISS THE PETITION (Doc. No. 26)** |

Presently before the Court are Petitioner Joseph Liska's motion for default judgment (Doc. No. 19,) and Respondent Donna Baron's[1] motion to dismiss Petitioner's petition for writ of habeas corpus pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), and 12(b)(6). (Doc. No. 26.) For the reasons stated herein, the Court denies Petitioner's motion, denies Respondent's Rule 12(b)(1) motion, and grants Respondent's Rule 12(b)(2) and 12(b)(6) motions.

///

///

---

[1] Although the complaint names Defendant as "Donna Baron," Ms. Baron's moving papers indicate the proper spelling of her last name is "Barron." For the sake of consistency with the petition, this Order addresses Defendant as "Ms. Baron."

## BACKGROUND

I.  The Parties

Petitioner Joseph Liska ("Petitioner"), proceeding *pro se*, alleges he is a descendant of the Pechanga Band of Mission Luiseño Mission Indians ("Pechanga Band" or "Tribe").

Respondents Mark Macarro, Mark Calac, Mar Luker, John Magee, Andrew Masiiel, Donna Baron, and Butch Murphy are allegedly "enrolled members of the Pechanga Band." Respondent Baron ("Respondent") is the only Respondent whom Petitioner has served with the complaint.

II. Factual and Procedural Background

On February 26, 2005 Petitioner attempted to enter to the Pechanga Indian Reservation ("The Reservation") without prior permission from the Tribe. (Attachment 1 to Petition, "Exclusion Letter.") Mr. Liska allegedly made false statements to the ranger on duty at the reservation entrance, claiming he was lost and sought to promptly turn around his vehicle and leave. After passing the ranger post, Petitioner continued into the reservation and did not turn his vehicle around until a ranger stopped him. The Tribal Council of the Pechanga Band ("Tribal Council") found that these actions constituted trespass and public nuisance and excluded Petitioner from the reservation pursuant to the Tribe's "Non-Member Reservation Access and Rental Ordinance." The Tribal Council informed Petitioner of his exclusion in a letter dated May 19, 2005. (Id.) Petitioner additionally alleges he attempted to enter the reservation on August 1, 2006 to pray at his father's gravesite, but tribal rangers refused to let him enter the reservation. (Petition at 7.) The rangers contacted the Riverside County Sheriff's Department, who dispatched a deputy to the scene. The deputy threatened to arrest Petitioner if he did not leave the reservation. (Id.)

On October 14, 2008 Petitioner filed a "Complaint [for] Writ of Habeas Corpus." (Doc. No. 1.) The Complaint alleges Respondents illegally banished Petitioner from the Pechanga Band, in violation of the United States Constitution and the American Indian Civil Rights Act of 1968 ("ICRA"), 25 U.S.C. §§ 1301, 1302, and 1303. Petitioner also filed an affidavit in support of his complaint attaching: (1) the exclusion letter; and (2) a letter from the Pechanga Indian Reservation verifying Petitioner's application for enrollment to the Pechanga Band, dated March 15, 2001. (Doc. No. 2.) The latter document explains that his membership application had not been processed due to

a "moratorium" enacted by the Pechanga Band. Petitioner prays that the Court issue an order vacating his alleged "conviction for unspecified criminal charges"[2] and his banishment from the Tribe. Additionally, Petitioner requests the Court order respondents to provide him with "back pay he should have been receiving" during the membership moratorium period. This "back pay" allegedly consists of "per capita payments" and revenue from "trust land," both of which are "paid to all other members of the Pechanga Band." (Petition at 5.)

a "moratorium" enacted by the Pechanga Band. Petitioner prays that the Court issue an order vacating his alleged "conviction for unspecified criminal charges"[2] and his banishment from the Tribe. Additionally, Petitioner requests the Court order respondents to provide him with "back pay he should have been receiving" during the membership moratorium period. This "back pay" allegedly consists of "per capita payments" and revenue from "trust land," both of which are "paid to all other members of the Pechanga Band." (Petition at 5.)

On June 15, 2009 Petitioner filed a motion for default judgment against all respondents. (Doc. No. 19.) Respondent Baron filed an opposition. The Court finds Petitioner's motion suitable for disposition without oral argument pursuant to Local Civil Rule 7.1(d)(1).

On June 25, 2009, Respondent Baron ("Respondent") filed the instant motion to dismiss the petition. Petitioner has filed an opposition and Respondent has filed a reply. The Court heard oral argument on Respondent's motion on Monday, July 27, 2009.

## DISCUSSION

I.    Petitioner's Motion for Default Judgment

On October 14, 2008 Petitioner filed his petition for writ of habeas corpus. On March 18, 2009, Petitioner moved for default judgment against Donna Baron (Doc. No. 5,) along with a proof of service indicating Ms. Baron had been served with the petition on February 12, 2009. Petitioner has not submitted proof that he has served any other respondent with the petition, aside from Ms. Baron. On April 2, 2009, the Court issued an order construing Petitioner's request as a motion for entry of default pursuant to Fed. R. Civ. P. 55(a), and granted the motion. The Clerk of Court entered default against Ms. Baron that same day. On May 12, 2009, Ms. Baron filed a motion to set aside the entry of default. (Doc. No. 13.) The Court granted the motion on June 22, 2009. (Doc. No 25.)

On June 15, 2009, before the Court granted Ms. Baron's motion to set aside default, Petitioner filed the instant motion default judgment against all respondents, including Ms. Baron. His motion contends all respondents were properly served with the complaint on February 13, 2009.

---

[2] It is unclear what "criminal charges" Petitioner references with this request. Ostensibly, Petitioner is referring to the Tribal Council's finding of trespass and public nuisance, which gave rise to his alleged "banishment."

A.  Legal Standard

Federal Rule of Civil Procedure 55 describes a two-step process by which a default judgment may be entered where the defendant is not an infant, incompetent person, or the United States government. See Fed. R. Civ. P. 55(a), (b) (2009); Bach v. Mason, 190 F.R.D. 567, 574 (D. Idaho 1999); see also Eitel v. McCool, 782 F.2d 1470, 1471 (9th Cir. 1986). First, under Rule 55(a), a plaintiff may request the clerk to enter a default against a party upon a showing that the party "has failed to plead or otherwise defend as provided by these rules. . . ." Fed. R. Civ. P. 55(a). After entry of default, and upon application by the plaintiff, a default judgment may then be entered by the clerk or by the Court pursuant to Rule 55(b). See Fed. R. Civ. P. 55(b).

B.  Analysis

As an initial matter, the Court has already set aside the Clerk's entry of default against Ms. Baron. Petitioner's motion for default judgment against Ms. Baron is therefore denied as moot.

As to the rest of the respondents, Petitioner has improperly moved for default judgment without first requesting a Clerk's entry of default against them pursuant to Fed. R. Civ. P. 55(a). However, even if the Court construed Petitioner's motion as a request for entry of default, his request is still denied because there is no proof that any of the remaining respondents have been properly served with the petition. Fed. R. Civ. P. 55(a) provides the clerk must enter a party's default "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, *and that failure is shown by affidavit or otherwise*[.]" Fed. R. Civ. P. 55(a)(2009) (emphasis added). Therefore, in order to secure entry of default a plaintiff must make a showing that the defendant(s) have been served with summons and complaint and have failed to respond within the time permitted by the Federal Rules of Civil Procedure. Accord Geter v. Horning Bros. Mgmt., 502 F. Supp. 2d 69, 70 (D. Colo. 2007) ("In the absence of proof that the individual defendants were properly served with process, no basis exists for entering defaults and granting plaintiff's motion for a default judgment.") Here, Petitioner has not properly secured a Clerk's entry of default before moving for default judgment, and has also failed to offer proof that an entry of default is even warranted. The Court therefore denies his motion for default judgment against respondents Macarro, Calac, Luker, Magee, Masiiel, and Murphy.

II.     Respondent Baron's Motion to Dismiss the Petition

Respondent's motion to dismiss is based on three theories: lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1); lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2); and failure to state a claim under Fed. R. Civ. P. 12(b)(6).

A.     Subject Matter Jurisdiction

Petitioner alleges Respondent was "at all times [a] member[] of the General Council of the tribe or [was an] individual who [was] given official authority to cause the banishment of Petitioner," and that she caused him to be banished "while acting in her official capacity." (Petition, ¶¶7-8. ) Respondent argues that because Petitioner sued her in her official capacity, she is protected by the doctrine of sovereign immunity and the Court lacks subject matter jurisdiction over this action.[3]

1.     Legal Standard

"[T]he issue of tribal sovereign immunity is jurisdictional in nature," Pan American Co. v. Sycuan Band of Mission Indians, 884 F.2d 416, 418 (9th Cir. 1989), and a court must address jurisdictional questions before proceeding to the merits of a case. Wilbur v. Locke, 423 F.3d 1101, 1106 (9th Cir. 2005). "A motion to dismiss for lack of subject matter jurisdiction may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." Thornhill Publishing Co. v. General Tel & Elect., 594 F.2d 730, 733 (9th Cir. 1979); see also Fed. R. Civ. P. 12(b)(1) (2009). "Unlike a Rule 12(b)(6) motion, a Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or *any other evidence* properly before the court." St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989) (emphasis added). Thus, the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of

---

[3] Respondent also appears to argue the Court lacks **personal** jurisdiction based on sovereign immunity, but provides no support for this argument beyond briefly invoking Fed. R. Civ. P. 12(b)(2) (2009).  Sovereign immunity is an issue underlying subject matter jurisdiction, not personal jurisdiction. See, e.g. Cook v. AVI Casino Enters., 548 F.3d 718, 726 (9th Cir. 2008) (upholding dismissal for lack of subject matter jurisdiction because of tribal sovereign immunity); and Cook v. Avi Casino Enter., 2006 U.S. Dist. LEXIS 78265, at *3 n. 2 (D. Ariz. Oct. 25, 2006) ("tribal sovereign immunity is an issue of subject matter jurisdiction . . . ."). Compare McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988) ("The question whether the United States has waived its sovereign immunity against suits for damages is, in the first instance, a question of subject matter jurisdiction.")

jurisdictional claims. Id. Because the plaintiff bears the burden of establishing subject matter jurisdiction, no presumption of truthfulness attaches to the allegations of the plaintiff's complaint and the Court must presume it lacks jurisdiction until the plaintiff establishes jurisdiction. Stock West, Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

### 2. Analysis

"Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58 (1978). Thus, a tribe may not be sued absent an express waiver or Congressional abrogation of sovereign immunity. A.K. Management Co. v. San Manuel Band of Mission Indians, 789 F.2d 785, 789 (9th Cir. 1986). With the passage of the ICRA, Congress created a limited mechanism for federal judicial review of tribal actions through the habeas corpus provisions of 25 U.S.C. § 1303.[4] Santa Clara Pueblo, 436 U.S. at 70. Under § 1303, suits against a tribe are barred by the tribe's sovereign immunity, Id. at 59, but "Congress clearly has power to authorize civil actions against *tribal officers*, and has done so with respect to habeas corpus relief in § 1303." Id. at 60 (emphasis added).

Respondent's argument that the Tribe's sovereign immunity shields her from Petitioner's habeas corpus claim against her in her official capacity is therefore meritless. Although the cases Respondent cites hold that tribal officials acting within the scope of their authority are immune from suit, none of those cases involve a § 1303 habeas corpus claim. See Burlington Northern & Santa Fe Ry. v. Vaughn, 509 F.3d 1085, 1093 (9th Cir. 2007) (holding tribal official was immune from suit for declaratory and injunctive relief); Marceau v. Blackfeet Hous. Auth., 455 F.3d 974, 978 (9th Cir. 2006) (holding sovereign immunity extended to board members of tribal housing authority in a class action seeking declaratory relief, injunctive relief, and damages); Hardin v. White Mountain Apache Tribe, 779 F.2d 476, 479-480 (9th Cir. 1985) (holding tribal officials acting in their representative capacities were immune from a suit for declaratory and injunctive relief). The Court denies Respondent's motion to dismiss the petition under Rule 12(b)(1) for lack of subject matter jurisdiction.

---

[4] "The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303 (2009).

### B. Personal Jurisdiction

Respondent's papers incorrectly conflate the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2). She apparently contends her arguments for lack of subject matter jurisdiction also establish lack of personal jurisdiction, even though the two inquiries are distinct. Nevertheless, Respondent's contention that she cannot give Petitioner the relief he seeks because she is no longer a Tribal Council member implicates personal jurisdiction, as discussed below.

#### 1. Legal Standard

Under Fed. R. Civ. P. 12(b)(2), a court may decide the issue of personal jurisdiction on the basis of affidavits and documentary evidence submitted by the parties,[5] or hold an evidentiary hearing[6] regarding the matter. See 4 Charles A. Wright & Arthur Miller, Federal Practice and Procedure, § 1351 (3d ed.2004); Data Disc, Inc. v. Systems Tech. Assoc., Inc., 557 F.2d 1280, 1285 (9th Cir.1977). The court retains broad discretion in determining which procedure to utilize. See, e.g., Travelers Cas. & Sur. Co. of America v. Telstar Constr. Co., 252 F. Supp. 2d 917 (D. Ariz. 2003). Under either procedure, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate. Rio Properties, Inc. v. Rio Int'l Interlink, 284 F.3d 1007, 1019 (9th Cir. 2002).

If the motion is based on affidavits and documentary evidence, the plaintiff need only make a prima facie showing of facts establishing personal jurisdiction, "i.e. facts that, if true would support the court's exercise of jurisdiction over the defendant." Amini Innovation Corp. v. JS Imports, Inc., 497 F. Supp. 2d 1093, 1100 (C.D. Cal. 2007). Uncontroverted allegations in the complaint are accepted as true and conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor. Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir. 2004). Nevertheless, a prima facie showing must be based on affirmative proof beyond the pleadings, such

---

[5] If the Court considers evidence presented in documentary evidence, it may order discovery on the jurisdictional issues. Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir.2001).

[6] At such a preliminary hearing, the plaintiff must establish the jurisdictional facts by a preponderance of the evidence. Data Disc., Inc. v. Systems Technology Association, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977).

as affidavits, testimony or other competent evidence of specific facts.[7] See 4 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1067.6 (3rd ed. 2002).

### 2. Analysis

The proper respondent in a federal habeas corpus petition is the petitioner's immediate custodian. Brittingham v. United States, 982 F.2d 378, 379 (9th Cir. 1992). However, "[a]s the 'custody' requirement has expanded to encompass more than actual physical custody, so too has the concept of a custodian as a respondent in a habeas case." Poodry v. Tonawanda Band of Seneca Indians, 85 F.3d 874, 899 (2d Cir.), cert. denied, 519 U.S. 1041 (1996). Therefore, even if a habeas corpus petitioner under § 1303 is not in actual physical custody he may still "'name as respondent someone (or some institution) who has both an interest in opposing the petition if it lacks merit, and the power to give the petitioner what he seeks if the petition has merit–namely, his unconditional freedom.'" Poodry, 85 F.3d at 899 (citation omitted); see also Quair v. Sisco, 359 F. Supp. 2d 948, 974 (E.D. Cal. 2004) (relying on Poodry, 85 F.2d at 899-900 and Armentero v. I.N.S., 340 F.3d 1058, 1064 (9th Cir. 2003)) (finding the petitioner had correctly named tribal council members as respondents in § 1303 matter because they were empowered to end the petitioner's restraint by overturning or ceasing to enforce the relevant banishment order).

Respondent submits, and Petitioner does not dispute, that "only the Tribal Council has [the] authority [to offer Petitioner his requested relief]." (Memo. ISO Motion at 2.) Accordingly, if Respondent is a member of the Tribal Council, she would be a proper respondent in this action under Poodry and Quair. However, Respondent's declaration states she is no longer a member of the Tribal Council or otherwise empowered to take any action with respect to Petitioner's expulsion. (Barron Decl. ISO Motion, ¶¶ 2-3.) At oral argument, Respondent again maintained she was no longer a member of the Tribal Council, and Petitioner did not refute this assertion. Petitioner also did not claim Ms. Baron is otherwise capable of providing him with the relief he seeks. Ms. Baron, therefore, is not the proper respondent in this action.

---

[7] Even if Plaintiff makes a prima facie showing, he still must prove the jurisdictional facts by a preponderance of the evidence at a preliminary hearing or at trial. Data Disc, Inc., 557 F.2d at 1285 n. 2 (citation omitted).

Federal courts lack personal jurisdiction when a habeas corpus petition fails to name a proper respondent, see Ortiz-Sandoval v. Gomez, 81 F.3d 891, 894 (9th Cir. 1996) (citing Rule 2(a), 28 U.S.C. foll. § 2254),[8] and Ms. Baron is the only respondent who has been served with the petition. Petitioner has therefore failed to properly establish personal jurisdiction. Although the Court may substitute the successor of a party sued in her official capacity under Fed. R. Civ. P. 25(d) (2009),[9] such a substitution would be futile in this case because Petitioner cannot state a claim, as is further explained below.

C.   Failure to State a Claim

1.   Legal Standard

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a) (2009). A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in the complaint. Fed. R. Civ. P. 12(b)(6); Navarro v. Block, 250 F.3d 729, 731 (9th Cir. 2001). The court must accept all factual allegations pled in the complaint as true, and must construe them and draw all reasonable inferences from them in favor of the nonmoving party. Cahill v. Liberty Mutual Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). To a void a Rule 12(b)(6) dismissal, a complaint need not contain detailed factual allegations, rather, it must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). However, "a plaintiff's obligation to

---

[8] Although there is no case holding that failure to name the proper respondent in a § 1303 habeas corpus petition defeats personal jurisdiction, the Court finds this rule is nonetheless applicable because courts deciding § 1303 claims frequently draw on principles of analogous habeas statutes. The Second Circuit has notably held that "the legislative history [of the ICRA] suggests that § 1303 was to be read coextensively with analogous statutory provisions [regarding the scope of federal habeas review]," and that "[c]ourts . . . appear to look to the development of law under 28 U.S.C. § 2254 for guidance as to whether habeas relief is available in such matters under § 1303." Poodry, 85 F.2d at 891-92. See also Weatherwax on behalf of Carlson v. Fairbanks, 619 F. Supp. 294, 296 (D. Mont. 1985) ("This court has consistently found the law which has developed with respect to actions for habeas corpus relief under 28 U.S.C. § 2254 to be applicable by analogy to actions founded upon 25 U.S.C. § 1303.")

[9] "An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party. Later proceedings should be in the substituted party's name, but any misnomer not affecting the parties' substantial rights must be disregarded. The court may order substitution at any time, but the absence of such an order does not affect the substitution."

provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555 (citation omitted). In spite of the deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts that [he or she] has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). The Court recognizes the mandate to construe a *pro se* plaintiff's pleadings liberally in determining whether a claim has been stated. Ortez v. Washington County, 88 F.3d 804, 807 (9th Cir. 1996).

In ruling on a motion to dismiss for failure to state a claim, "a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." Swartz v. KPMG LLP, 476 F.3d 756, 763 (9th Cir. 2007). If a complaint fails to state a claim, the court should grant leave to amend unless it determines that the pleading could not possibly be cured by the allegation of other facts. Doe v. United States, 58 F.3d 494, 497 (9th Cir. 1995). Leave to amend, however, may be denied where a complaint previously has been amended, or where amendment would be futile. Allen v. City of Beverly Hills, 911 F.2d 367, 373 (9th Cir. 1990).

    2.  Analysis

      a.  25 U.S.C. § 1301 and 1302 Claims

Respondent first challenges Petitioner's claims under 25 U.S.C. §§ 1301 and 1302. Section 1301 merely provides the definitions of various terms of the ICRA, and does not contain provisions capable of being violated. The Court therefore strikes Petitioner's § 1301 cause of action under Fed. R. Civ. P. 12(f)(1)[10] as redundant of his other claims.

Section 1302 lists a number of substantive constitutional rights afforded to individuals. However, Title I of the ICRA does not establish or imply a federal civil cause of action to remedy violations of § 1302. See Santa Clara Pueblo, 436 U.S. at 72; Poodry, 85 F.3d at 884 ("Santa Clara Pueblo thus precluded federal interpretation of the substantive provisions of the ICRA, except in cases

---

[10] "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed R. Civ. P. 12(f) (2009).

in which the relief sought could properly be cast as a writ of habeas corpus.") Rather, the ICRA "identifies explicitly only one federal court procedure for enforcement of the substantive guarantees of § 1302: § 1303 makes available to any person 'the privilege of the writ of habeas corpus . . ., in a court of the United States, to test the legality of his detention by order of an Indian tribe.'" Id. at 882 (quoting 25 U.S.C. § 1303).

Here, Respondent argues Petitioner cannot state a § 1302 claim because the ICRA does not provide an individual civil cause of action under that section. This argument fails because Petitioner's allegations under § 1302 are not independent civil causes of action; they ultimately derive from his alleged "illegal banish[ment]," which, as explained below, is also the basis for his claim for habeas corpus relief under § 1303. Petitioner's ability to assert his § 1302 claims therefore turns on his eligibility for relief under § 1303. The Court addresses this issue further below.

### b.  25 U.S.C. § 1303 Claim

25 U.S.C. § 1303 (2009) provides, "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." Petitioner alleges he was denied various procedural and substantive rights under the ICRA as a result of the proceedings that resulted in the Tribe's decision to "illegally banish" him from the reservation. He now challenges the legality of this alleged "detention" under § 1303 and alleges the Tribe's actions denied him: (1) his right to free speech, peaceful assembly, and to petition for a redress of grievances under § 1302(1); (2) his right to a trial, to confront adverse witnesses, to be informed of the nature and cause of accusations against him, to produce favorable witnesses, and to an attorney under § 1302(6); (3) his right to be free from cruel and unusual punishment under § 1302(7); (4) his rights to equal protection and due process under § 1302(8); and (5) his right to a jury trial under § 1302(10). (Petition at 3-4.)

In order to state a claim for habeas corpus relief under § 1303, Petitioner must successfully allege, *inter alia*, that he is being "detained" within the meaning of the statute. See Poodry, 85 F.3d at 889. In Poodry, court determined the petitioners' banishment constituted "detention" for purposes of § 1303 because the tribe's revocation of the petitioners' tribal membership and subsequent banishment constituted a significant restraint on their liberty to which other members of the tribe were

not subject. Id. at 895-97; Quair, 359 F. Supp. 2d at 969. Cf Alire v. Jackson, 65 F. Supp. 2d 1124, 1129 (D. Or. 1999) (finding a tribe's exclusion of a nonmember "[fell] far short of the severe restraint on liberty suffered by the plaintiffs in Poodry" because the plaintiff "[had] not been stripped of her Indian name, her lands, her tribal citizenship, or her tribal membership, nor [had] she been banished frm her own Tribe's reservation or territory.") Petitioner has cited no authority for the proposition that a non-member of a tribe who is excluded from a reservation is "detained" as contemplated by § 1303. In fact, Ninth Circuit authority conclusively establishes that "[i]n the absence of treaty provisions or congressional pronouncements to the contrary, the tribe has the inherent power to exclude non-members from the reservation." Quechan Tribe of Indians v. Rowe, 531 F.2d 408, 410 (9th Cir. 1976).

Respondent argues the "detention" requirement has not been satisfied here, because unlike in Poodry, "Petitioner was not stripped of his tribal citizenship because he never was a Pechanga Tribal citizen." (Reply at 7.) The Court agrees. Properly focusing on the petition itself and the attached documents for the purposes of Rule 12(b)(6), the petition alleges Petitioner is a "descendent" of the Pechanga Band (Petition at 1), as opposed to a member. Petitioner also attaches a letter from the Tribe indicating that at some point prior to March 15, 2001 he had applied for membership in the Tribe but that his application "ha[d] not been processed due to a moratorium enacted by the Pechanga Band." (Attachment 2 to Petition.) Plaintiff's affidavit in support of his petition describes the letter as one of "acknowledgment that Petitioner is a descendant of the Pechanga Band of Mission Indians;" not that he is a member of the Tribe. (Liska Affidavit of Supporting Documentation ISO Petition.) Moreover, elsewhere in the petition, Petitioner prays for "per capita payments that he should have been receiving for the last ten years he's been sitting in the tribe's moratorium," (Petition at 8,) further indicating that while Petitioner may self-identify as a tribal member,[11] he is not an official member

---

[11] At points in his petition Petitioner claims he was "stripped of his citizenship in the tribe" (Petition at 2,) and that he has "lost individual recognition as a member of a federally recognized indian tribe." (Id. at 3.) His conclusory labeling of himself as a tribal member is insufficient to establish a basis for habeas corpus relief under § 1303. See Twombly, 550 U.S. 544 at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citation omitted).

of the Pechanga Band and continues to be subject to the Tribe's moratorium on membership. Petitioner's assertion at oral argument that he is not a tribal member corroborates the Court's reading of the petition.

Therefore, Petitioner has not alleged he is an official member of the Pechanga Band. Although the Court sympathizes with Petitioner's situation, he has not sufficiently alleged his exclusion from the Tribe constitutes a restraint on liberty that rises to the level of a "detention" for purposes of § 1303. Further, because Plaintiff *cannot* claim he is a member of the Tribe, it would be futile to amend his petition to sufficiently allege the "detention" requirement. As such, even if Petitioner had established personal jurisdiction in this case by naming and serving the proper respondent, which he has not, he still could not state a claim under § 1303. The Court therefore dismisses the petition with prejudice.

### c.     18 U.S.C. § 1167 Claim

As Respondent points out, Petitioner invokes but does not discuss 18 U.S.C § 1167 in his petition. The statute provides:

> (a) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value of $ 1,000 or less belonging to an establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined under this title or be imprisoned for not more than one year, or both.
>
> (b) Whoever abstracts, purloins, willfully misapplies, or takes and carries away with intent to steal, any money, funds, or other property of a value in excess of $ 1,000 belonging to a gaming establishment operated by or for or licensed by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission shall be fined under this title, or imprisoned not more than ten years, or both.

28 U.S.C. § 1167 (2009). Respondent is correct that this is a criminal statute does that does not provide a private right of action. Even if the Court did have personal jurisdiction in this case, which it does not, Petitioner could not state a claim for relief under this statute.

///
///
///

## CONCLUSION

As discussed herein, the Court denies Petitioner's motion for default judgment and denies Respondent's motion to dismiss the complaint for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). However, the Court grants Respondent's motion to dismiss the petition for lack of personal jurisdiction under Fed. R. Civ. P. 12(b)(2), and alternatively for failure to state a claim under Rule 12(b)(6). The Court also strikes Petitioner's claim for relief under 25 U.S.C. §§ 1301, pursuant to Fed. R. Civ. P. 12(f)(1). The Court dismisses the petition with prejudice.

**IT IS SO ORDERED.**

**DATED:  August 5, 2009**

*Irma E. Gonzalez*
**IRMA E. GONZALEZ, Chief Judge**
**United States District Court**